UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA MOBILITY LLC | ) | CASE NO. 09-cv-6610 |
| | ) | |
| Plaintiff, | ) | Judge Joan B. Gottschall |
| | ) | |
| v. | ) | |
| | ) | |
| AU OPTRONICS CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF MOTOROLA MOBILITY LLC'S REPLY BRIEF
IN SUPPORT OF MOTION TO EXCLUDE
CERTAIN EXPERT TESTIMONY OF DANIEL L. RUBINFELD**

**I.     INTRODUCTION**

Samsung may not reap the benefits of the Department of Justice's antitrust leniency program – bringing in monopoly profits throughout its illegal conspiracy, then informing on its co-conspirators to avoid criminal fines and limit its civil damages by two-thirds – without conceding publicly its involvement in a price-fixing conspiracy substantially affecting U.S. commerce. And Samsung may not present at trial damages opinions which fundamentally conflict with that position. *See Comcast Corp. v. Behrend*, __ U.S. __, 133 S.Ct. 1426, 1433 (2013) (a party's "damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation") (citation omitted).

Samsung plans to offer its witness Dr. Daniel Rubinfeld for nothing less than disclaiming the effectiveness of the LCD price-fixing conspiracy (Sections IV and V of his report) and negating any overcharges on Samsung' LCD panels caused by that conspiracy (Section VI). *See* Motion Ex. A, Expert Report of Daniel L. Rubinfeld (Feb. 23, 2012). Dr. Rubinfeld would testify that Samsung's small-sized LCD overcharge was **0.7 percent**, *id.*, ¶ 18, and that Samsung's conduct had a "**limited economic impact**." *Id.*, ¶ 13. While Samsung need not "concede … that its conduct caused the same degree of overcharges claimed by Motorola," Opp. at 1, Dr. Rubinfeld's no-damages conclusion is just a blatant attempt by Samsung to have its leniency cake and eat it too. Having already admitted they "did do it," Samsung cannot use Dr. Rubinfeld's opinion at trial to say they "didn't do it."

Samsung may also not use Dr. Rubinfeld to reinterpret the conspiracy documents for the same purpose. The jury will determine which documents support Samsung's price-fixing agreement. *See Jamsport Entm't, LLC v. Paradama Prod., Inc.*, No. 02 C 2298, 2005 WL 14917, at *10 (N.D. Ill. Jan. 3, 2005). Samsung's price-fixing culpability is the very crux of this case and the task of reviewing the conspiracy evidence is reserved solely to the jury.

II.     **ARGUMENT**

Samsung's cooperation with the government has directly resulted in convictions of nearly a dozen large companies and over $1 billion in criminal fines. Because any Samsung expert opinions at trial must reflect that fact, this court should exclude from trial Dr. Rubinfeld's "no-damages" overcharge conclusion and his "no price-fixing agreement" evidentiary conclusions.

   A.  **A trivial 0.7 percent overcharge cannot be reconciled with Samsung's liability case and Dr. Rubinfeld's own "assumptions."**

Motorola's *Daubert* motion would prevent Samsung – and only Samsung – from presenting a "no-damages" opinion at trial. Samsung misses the point of Motorola's motion entirely, as reflected by its mischaracterization of the challenged testimony as "Professor Rubinfeld's opinion that damages were significantly lower than claimed by Motorola… ." *See* Opp. at 3. Contrary to Samsung's assertions, Motorola has not filed a *Daubert* motion against Samsung's expert merely because of his "significantly lower" estimate, just as Motorola has never contended "that Samsung's expert must agree with Motorola's expert on the economic effects of anticompetitive conduct." Opp. at 6. Motorola has not filed any *Daubert* motions against joint defense expert Dr. Dennis Carlton – despite his "significantly lower" damages estimates. Rather, Motorola's motion is grounded on Dr. Rubinfeld's estimate of a Samsung overcharge of **0.7 percent**, Motion Ex. A, Rubinfeld Report, ¶ 18, with implied damages as low as **$8 million**, Opp. at 6, **which effectively nullifies the existence of a conspiracy affecting U.S. commerce**.

Samsung has already admitted its criminal antitrust violations, and cannot present an expert witness with the diametrically opposite conclusion that Samsung's overcharges were basically zero. This blatant inconsistency is underlined by the differences between Samsung's circumstances – an antitrust leniency candidate facing trial against a victim identified by two of

2

the resulting guilty pleas[1] – and the "nominal damages" cases cited in its opposition brief. *See U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1341 (2d. Cir. 1988) (where jury "found that the [defendant] did not engage in a conspiracy in restraint of trade"); *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d 1130, 1136 (8th Cir. 1981) (noting trial court "failed to find a conspiracy"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (involving final approval of a class action settlement before trial). Similarly, the trials against Toshiba and HannStar also did not involve a leniency applicant – and in this case Motorola has never filed a *Daubert* motion against a Toshiba or HannStar expert witness.

Ultimately, unlike all of the other cases relied upon in its brief, Samsung must admit its illegal price-fixing and assist in the prosecution against its co-conspirators at its upcoming trial with Motorola. Dr. Rubinfeld may not deny Samsung's liability position with a "no-damages" opinion.

### B. Dr. Rubinfeld's opinion on the conspiracy involving LCD panels for mobile phones does not fit with its liability case.

The true purpose of Dr. Rubinfeld's testimony – nullifying Samsung's statutorily-required liability admission – is most completely illustrated by Samsung's argument characterizing "Crystal Meeting" communications as excluding small size LCD panels and asserting that Samsung "aggressively competed for Motorola's business." *See* Opp. at 5. As Motorola noted in its moving papers, and Samsung's opposition brief does not contest, Dr. Rubinfeld appears to limit his understanding of a conspiracy including Samsung to "a consensus with other defendants on **large LCD panel pricing**." *See* Motorola Memorandum In Support of

---

[1] *See, e.g.*, Motion Ex. C, Sharp Plea Agreement.

3

Motion at 5, n. 3, *citing* Ex. A, ¶ 29 (emphasis added). **However, Samsung's verified contention interrogatory responses admit to fixing prices in multiple meetings with small panels supplier Epson.** *See, e.g.,* Motion Ex. B at 51 ("H.B. Suh met with Mr. Ito of Epson approximately five to seven times. …They sometimes reached "understanding of what the price would be.") Dr. Rubinfeld's opinion on the conspiracy involving LCD panels for mobile phones contradicts Samsung's liability case. Thus, his testimony is irrelevant, and it should be excluded as unhelpful to the jury.

      **C.    Rule 702 bars expert economists from testifying on factual and legal matters such as whether or not Samsung entered into a price-fixing agreement.**

Samsung is barred from offering an expert to interpret particular documents for inferences regarding the motivation behind them. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1340 (7th Cir. 1989) (rejecting testimony). Dr. Rubinfeld's proposed alternative inferences behind Defendants' competitor meeting notes and correspondence requires no particular "knowledge, skill, expertise, training or education." *Lees v. Carthage College*, 714 F.3d 516, 521 (7th Cir. 2013). Those hypothetical interpretations should be excluded from trial.

Samsung misstates the real issue by asserting that Motorola may "challenge Dr. Rubinfeld's understanding of the background facts" at trial. *See* Opp. at 12. While Motorola expert Dr. Douglas Bernheim's understanding of the conspiracy – like Samsung's expert, assumed as an aspect of his engagement by counsel – was confirmed by his review of the documentary evidence, Dr. Rubinfeld's re-interpretation would contradict the defining assumption of his task. Thus, Dr. Rubinfeld has given "a legal rather than an economic opinion." *See Mid-State Fertilizer*, 877 F.2d at 1340, *citing* George J. Stigler, *What Does an Economist Know?*, 33 J. Legal Ed. 311 (1983).

4

Motorola's case hinges on proving the Defendants' price-fixing agreements, primarily through Defendants' own documents and witnesses. Thus it is critical that the jury – not Dr. Rubinfeld – determine which Defendant communications "**involved information sharing as opposed to price agreements**." *See* Motion Ex. A, Rubinfeld Report, ¶ 91 (emphasis added). This is not a case like *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, where, for purposes of determining alleged false advertising damages, the defendant's marketing materials were interpreted for identifying "key drivers" of sales. 2010 WL 3397358, at *4 (N.D. Ill. Aug. 24, 2010). Critically, the challenged expert in that false advertising case was not offering his own opinions on whether or not any defendant advertisements were, in fact, false and misleading – while Dr. Rubinfeld would be applying his expert imprimatur to opine that certain Defendants' documents did not, in fact, reflect illegal price-fixing. Dr. Rubinfeld is not "any more competent than the average juror in interpreting" which documents contradict Samsung's price-fixing liability. *See Jamsport Entm't, LLC*, 2005 WL 14917 at *10. Dr. Rubinfeld's "no price-fixing agreement" opinions are inappropriate and should be excluded from trial.

### III.    CONCLUSION

For the foregoing reasons, Motorola respectfully requests that the Court exclude Dr. Rubinfeld's (1) damages estimates essentially nullifying the conspiracy conceded by Samsung; and (2) his inappropriate lay interpretations of the factual record.

Dated:  December 3, 2013                         Respectfully submitted,

                                                 */s/ Jason C. Murray*

                                                 Janet I. Levine (*pro hac vice*)
                                                 Jason C. Murray (*pro hac vice*)
                                                 Joshua C. Stokes (*pro hac vice*)
                                                 CROWELL & MORING LLP
                                                 515 South Flower St., 40th Floor
                                                 Los Angeles, CA  90071
                                                 Telephone: 213-622-4750

5

Facsimile: 213-622-2690
Email: jlevine@crowell.com
jmurray@crowell.com
jstokes@crowell.com

Jeffrey H. Howard (*pro hac vice*)
Jerome A. Murphy (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
Email: jhoward@crowell.com
jmurphy@crowell.com

R. Bruce Holcomb (*pro hac vice*)
ADAMS HOLCOMB LLP
1875 Eye Street NW
Washington, DC 20006
Telephone: 202-580-8822
E-mail: holcomb@adamsholcomb.com

Michael D. Sher
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602
Telephone: 312-269-8085
Facsimile: 312-429-3553
E-mail: msher@ngelaw.com

*COUNSEL FOR PLAINTIFF*
*MOTOROLA MOBILITY LLC*

## CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of December, 2013, a true and correct copy of the foregoing **PLAINTIFF MOTOROLA MOBILITY LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF DANIEL L. RUBINFELD** was served electronically by U.S. District Court CM/ECF e-filing system.

                                                */s/ Robert B. McNary*